Wanamaker, J.,
dissenting. I hold that the judgment of this court will not square with the justice of the constitution.
I hold that the judgment directly violates the statutes creating the Public Utilities Commission and defining its jurisdiction and powers.
I hold that the commission has no jurisdiction under the statute as to the class of telephone companies represented by the defendant in error, by virtue of the express provisions and exclusions declared by the plain provisions of the statute itself.
The public utilities commission act names and defines the specific public utilities over which the jurisdiction of the commission shall extend. This is done by the early sections of the statute, particularly Sections 614-2 and 614-2a.. The last section dealing with jurisdiction is Section 614-8, which reads:
*507 “The commission shall have general supervision over all public utilities within its jurisdiction as hereinbefore defined,” etc.
This last section expressly and conclusively closes and confines the jurisdiction of the commission to these two limitations:
1. Public utilities within its jurisdiction.
2. As hereinbefore defined.
It does not read, “as hereinbefore or hereinafter . defined.” The remaining sections of the act deal not with jurisdiction, but with “powers” in the exercise of that jurisdiction.
This applies particularly to Section 614-52, that likewise deals with powers over telephone companies, one of the thirteen classes defined as being within the jurisdiction of the commission in Section 614-2. It in no wise increases or decreases the jurisdiction as fixed by Section 614-2a, but only grants power for the exercise over such utilities as have theretofore been put within the jurisdiction of the commission.
An examination and survey of these several sections relating to jurisdiction may be summarized by the following classification, that will make plain and clear the language of the legislature, or the legislative sense and intention, concerning the public utilities act, and the utilities over which that act should operate.
Public utilities by this act are divided into two major classes:
Class 1. “Such public utilities as are, or may hereafter be owned or operated by any municipality.”
*508 All such utilities are expressly excluded from the jurisdiction of the commission by Section 614-2a.
With this exclusion, what residue remains for class 2 ? The answer is:
Class 2. Such public utilities as are or may hereafter be owned or operated privately.
Again, the statute classifies these utilities that are owned or operated privately, as follows:
Sub-class 1. Privately “operated not for profit.” This sub-class is also expressly excluded from the jurisdiction of the commission, under Section 614-2a. That leaves as a residue for the jurisdiction of the commission:
Sub-class 2. Privately “operated for profit.”
If this be the correct measure of the jurisdiction of the Public Utilities Commission, as defined and fixed by Sections 614-2 and 614-2a, and the other jurisdictional sub-sections of the act, then the sole, single question under the statute is:
Is The Union-Center Mutual Telephone Association, under the record of this case, operating a public utility for profit ?
Here is the crucial, critical question of this case, and it is so admitted in the majority opinion, which I shall refer to later.
This was one of the leading issues made in the pleadings before the court of appeals, where this case was taken by the plaintiff on appeal. There the plaintiff, plaintiff in error here, was seeking an injunction against the defendant, and set forth its cause of action at great length and in much detail in its amended petition, but nowhere in that amended petition was it pleaded that the defendant *509 company had a public utility that was operated “for profit.”
In the first defense, the answer directly and expressly makes an averment in the following language:
“Defendant’s plant is organized and will be operated not for profit.”
Plaintiff in its reply took direct express issue with this averment, squarely denying the language used in the answer. That made an issue of fact between the parties under the petition and the first defense. The language of the reply in that respect is as follows :
“It denies ‘That the defendant’s plant is organized and will be operated not for profit.’ ”
The second defense pleaded the unconstitutionally of Section 614-52, urging that the same was “Illegal and void, in that it tends to create a monopoly in restraint of competition, and is detrimental to the public welfare; that said section is unconstitutional and void,” in that it contravenes certain sections of state and federal constitutions.
There was also a 3d, 4th and 5th defense that it is unnecessary here to consider.
The court below has shown by its opinion, its journal entry, the briefs of counsel, the arguments of counsel — these all agree — that the second defense was the only question of law or fact decided by the court of appeals.
If there be any doubt of that proposition, it will readily be dispelled by noting in the record plaintiff’s motion for a new trial, the fifth ground of which reads:
*510 “The court erred in entering a finding and decree for the defendant and against the plaintiff without having heard the case upon its merits, other than the constitutional question of Section 614-52 of the General Code.”
I hold, therefore, that the only question before this court at this time is the question heard and decided by the court of appeals, to-wit, the constitutionality of Section 614-52, General Code.
In my dissent, I shall proceed as far as pertinent, to follow the order of discussion appearing in the majority opinion.
The opinion says:
“As a public utility the defendant comes under the jurisdiction of the public utilities act, unless it is taken out under one of the three exceptions mentioned in Section 614-2a-. Two of these exceptions have no application whatever to the defendant and may be discarded, as it is not a railroad or a municipally owned or operated utility. The next question, then, is whether or not it is a public utility operated 'not for profit/ ”
That was a direct and express issue raised by the pleadings in the court of appeals, and I am grateful to the majority opinion in this case for having admitted the crucial and decisive importance of this issue and that it must be determined before a just judgment can be rendered. I still deny, however, that this issue is before this court, because it is still undecided below, because there has never been any hearing upon this issue in the court below, nor any decision thereon in the court below, and there was nothing before the court in the pleadings or answer *511 that could by any possibility have measured up to “clear and convincing proof” required by law for injunctive relief. However, having announced this as the controlling question, the majority opinion proceeds to lay down the rule or principle by which it may be determined whether or not the defendant company “operates for profit” or “operates not for profit,” as follows:
“The next question then is whether or not it is a public utility operated ‘not for profit.’ How may it be determined whether a corporation or association is one for profit or not for profit? Does the filing of articles of incorporation, in which the declaration is made that it is not for profit, and on which the charter is issued, govern or determine this question ? Is the issuance or nonissuance of capital stock controlling, or is it whether a business is to be engaged in, and operated with consideration of the character of that business and the method of conducting it, that is the true test ?
“We think the latter.”
Why does this test become important? Because the majority opinion approves the classification under the statute that I have heretofore made, to-wit, that this privately owned public utility is not within the jurisdiction if it be found that it is not “operated for profit.”
This test has my entire approval. It is a safe and sound test. A few lines further on in the opinion it is again said:
“In other words, it is the character of the business and the method of conducting that business that controls/”
*512 This supreme test, as held by the majority opinion, is a complete repudiation of the doctrine announced by this court in Ashley Tri-County Mutual Telephone Co. v. New Ashley Telephone Co., 92 Ohio St., 336.
The decision announced in that case is that it did not matter, — quoting from the syllabus, where it is said, “whether such companies are organized for profit or not,” they are within the jurisdiction of the commission under Section 614 and sub-sections, especially 614-52.
Evidently the doctrine, and the reasons therefor, announced in the New Ashley case, just cited, did not appeal to the majority of this court as sound and sufficient to support the holding in this case, and therefore a new statement of reasons, required by the constitution, needs be made in this opinion.
But after repudiating the logic of the New Ashley case, which holds that it does not matter whether “such companies are organized for profit or not” they are within the jurisdiction of the commission, the opinion undertakes by a strained, unnatural and illogical process of pretended reasoning to demonstrate that the defendant company is a utility “for profit,” in order to bring it within the jurisdiction which the New Ashley case, supra, held to be unnecessary and immaterial as to jurisdiction.
The majority opinion after announcing this test for the determination of whether or not the defendant’s utility is operated for profit or not for profit — which is clearly and unmistakably an issue of fact, for how can one determine the “character of the business and the method of conducting it” with *513 out going into the facts, customs and methods showing the nature of that business, how it was operated •— without any evidence whatsoever in the court below or here treats this whole matter as one of possible legal inferences, guess and conjecture, and finally concludes the whole matter as follows:
“We believe that taking into account the various representations made by this defendant in its statements and admissions, and applying statutory rules of law made applicable to that situation and condition, that this company from the very nature of its organization and existence is a public telephone company, a utility, and a common carrier, and, considering the nature and character of the business which it must engage in with the public as its patron, that such a business, no matter what the pretense may be, no matter what claims are advanced, in its very nature cannot be one operated in the true sense of the term 'not for profit:’ ”
This paragraph is a genuine surprise, an astonisher, if you please, containing a newly-discovered doctrine announced for the first time since this case was first argued in this court — and no brief or argument or even suggestion of any judge advanced the particular theory that the “various representations made by this defendant in its statements and admissions” have proven a good cause of action by clear and convincing evidence and have also destroyed all defenses under the statute.
This new discovery, coming at this very late hour, is surely worthy of inspection and most careful analysis. I examined the opinion again and again *514 with the utmost care to discover what the court had in mind, what “statements and admissions by the defendant” have shown by clear and convincing proof that “such a business * * * in its very nature cannot be one operated in the true sense of the term ‘not for profit.’ ”
This is the keystone of the legal arch erected to support this judgment. The arch is as strong as the keystone, and no stronger. What statement or what admission has defendant made, and where has it been made? The opinion does not point it out; and why has the opinion not pointed it out? Evidently it must be somewhere in the record. So far as the defendant is concerned, that record, so far as it may bind it, is all contained in its “answer to the amended petition,” composed of five defenses, in all about eight pages, and the answers to the interrogatories submitted by the plaintiff below, which answers are fourteen in number and about two pages of the record. It would seem to have been the part of propriety and prudence to have given a bill of particulars, setting forth these various “statements and admissions,” which are evidently so simple and self-evident, and which in and of themselves constitute sufficient reasons for this judgment in conjunction with the “controlling test” heretofore announced in the majority opinion.
I supposed this was an equitable action brought not by the defendant, but by the plaintiff. I always understood that when the plaintiff sought an injunction, the burden was upon him to show his right to such relief by “clear and convincing” evidence. *515 I never understood that that burden rested upon the defendant.
Why, even in an action at law brought before a justice of the peace, I always understood that a bill of particulars was required, and that no judgment could be rendered until such bill was filed, and that that bill of particulars had to be filed by. the plaintiff, not by the defendant; the latter might remain silent; he was not called upon to furnish any proof. It would seem that in a case of this importance it would be necessary for someone, in behalf of the judgment, to point out these fatal suicidal “statements and admissions” of the defendant which give the plaintiff the right to a perpetual injunction, and which practically confiscate the property of the defendant.
Moreover, these “statements and admissions” by the defendant must show the “character of that business, and the method of conducting it,” the controlling test heretofore approved by the majority, and such “statements and admissions” must furthermore show that the defendant operates a utility “for profit.”
Here I appeal to the record as to these “statements and admissions” showing “the character of that business, and the method of conducting it.” .
. The judgment of reversal in this case is rendered in favor of the plaintiff in error. What does plaintiff in error say in its several briefs as to these “statements and admissions” of the defendant as to the latter’s business, upon which statements and admissions this court bases its judgment of reversal?
*516 I have before me the “supplemental joint brief for plaintiffs in error on re-argument,” bearing the following distinguished array of counsel: D. J. Cable, H. J. Booth, A. G. Aigler, G. W. Sheetz, attorneys for The Local Telephone Company; J. D. Johnson, Myers & Myers, attorneys for The Celina & Mercer County Telephone Company.
This brief bears the date “Nov. 3rd, 1919,” after the case had been twice argued in our court. In view of these alleged suicidal “statements and admissions” on the part of the defendant, that the court holds it has made in the record, it will be pertinent to quote with exactness how the numerous and distinguished counsel of plaintiff view these statements and admissions. These statements and admissions must relate to this crucial test heretofore announced, “the character of that business and the manner of conducting it,” and therefore must be limited somewhat to the public utility, the common carrier, the manner of operation, and whether or not it is one operated for profit.
How reads the record as presented by the plaintiff in error’s said counsel ? Page 4 of that brief contains the following, verbatim:
“The Cranberry Mutual Telephone Company, defendant in error, is a corporation which was incorporated and organized in the year 1912 under the laws of Ohio, not for profit, and makes no charge whatsoever for services rendered by it, save and except that the expense incident to its operation is to be divided among the members thereof, each member paying his portion of such expense, proportioned to his use of the service. (Record 11-12.) *517 In other words, as shown by its name and by the findings of the Court of Appeals, it is a mutual company organized to furnish telephone service to its members and not for any other purpose .”
This deals with one of these companies. Page 5, and also a part of page 6, of plaintiff in error’s brief contains the following verbatim:
“The Union-Center Mutual Telephone Association, defendant in error, is ‘a partnership association under the laws of the State of Ohio.’ ”
The character of the defendant in error in this case, No. 16139, and the business for which it was organized, are more fully shown by interrogatories propounded by the plaintiff and answered by the defendant. (Record 19, 23.)
We call special attention to the following interrogatories and the answers thereto, viz.:
“3. If the defendant proposes to construct and operate a telephone exchange, does the defendant propose to permit the use of any of its telephone or any of its service by any person or persons other than the members of its company?” (Record, p. 19.)
Answer: “No.” (Record, 22.)
“6. If the defendant proposes to make such long distance toll line connection, does the defendant -propose to furnish the citizens of said village, and the public, communication or service thru its exchange over such toll line or lines, and collect or charge a compensation therefor?” (Record, 19-20.)
Answer: “No.” (Record, 22.)
*518 “8. If the defendant proposes to erect such telephone plant, does the defendant propose to accept or receive any money or any thing of value for the use of its telephonic service, from any person other than those who may be purchasers or owners of telephones and members of said company ?”
Answer: “No.” (Record, 22.)
“10. Having applied for and received a franchise to use the public streets, alleys and highways, for and in the construction of your telephone plant, do you expect to serve the public in transporting telephonic messages?” (Record, 20.)
Answer: “No.” (Record, 22.)
“14. Will you serve the public indiscriminately?” (Record, 21.)
Answer: “No.” (Record, 23.)
In the answers to interrogatories 11, 12 and 13, the private character of the service is emphasized by the statements:
“It is the intention of defendant company to operate a purely mutual telephone plant.”
“It is not the intention of the defendant company to connect with any public utility company until it shall obtain permission or has the right to do so.”
Page 11 of the same brief contains further pertinent information touching the claims of the respective parties, and especially these suicidal statements of the defendant as charged in the -majority opinion:
“The purposes for which the defendants were organized preclude them from entering into contracts for furnishing telephonic service to the municipalities or their inhabitants.
*519 “One of the defendants is a corporation organized not for profit, as a mutual telephone company; and the other is a partnership formed for the purpose of furnishing telephone service to its members. As to The Cranberry Mutual Telephone Company this is shown by the record in case No. 16130 (R. 11) and as to The Union-Center Mutual Telephone Association on pages 11, 24 and 25 of the Record in Case No. 16139. Neither of these companies will, or can be required to, furnish service to anyone except to members of its organization, and as a matter of fact the corporation, if it attempted to do so, would act ultra vires and would subject itself to an action for the forfeiture of its charter, while the partnership expressly states that it will furnish service to no one except members of its association. The records disclose that neither of them expects to furnish service either to the municipalities or the general public.”
Much more to the same effect might be quoted from plaintiff in error’s numerous briefs as to these statements and admissions of the defendant, but this would seem sufficient.
Where does the court get any consolation out of the above to warrant the claim either that defendant telephone association is a real public utility, that it is operated as a common carrier, that it is serving the public “indiscriminately,” or that it is “operated for profit?”
I may be mentally blind or stupid, but I freely confess my inability to read in these statements and admissions of the defendant as quoted by the plaintiff in error, which the majority urge as good *520 reasons for the rendition of a judgment in its . favor; I say I am unable to square those statements with the contrary statements of this court upon the same subject-matter, by which this court undertakes to support the judgment which it now renders in favor of the plaintiff in error. To me they are diametrically opposed to each other, and utterly repugnant and. irreconcilable to each other.
Clearly upon the claims made by the plaintiff in error, above quoted from the record, the defendant is not a public utility, it is not a common carrier, or, if a public utility, it is clearly not operated for profit, but for the benefit of its. members only, at actual cost, and in any and all events it is outside of the jurisdiction granted by the statute to the Public Utilities Commission.
Boiled down, the court holds, in legal effect, that the legislature in Section 614-2a excepted something that it is impossible to except; that the legislature excepted something that had no existence; that there is in fact “no such animal” as a telephone company “operated not for profit,” and that calling it so in the pleadings, though in the exact words of the statute, is a mere pretense and sham.
To say the least, this is a most extraordinary holding.
First, it is contradicted under oath by the pleadings in this case.
Second, it is contradicted by the syllabus and opinion in the New Ashley case, 92 Ohio St., 336, where such utilities are admitted to be in existence and where the utility is admitted to be one of the *521 kind mentioned in this very exception of Section 614-2a.
Third, it is contradicted by the statute itself in making the exception, but for which fact it would be included in the act.
Fourth, it is contradicted because of common knowledge and common experience among men that there are many mutual companies cooperative in their nature, organized for the purpose of avoiding and eliminating profits, and to furnish the product or service dealt in at actual cost to their members.
Fifth, it is contradicted by all the various arguments and briefs that have heretofore been presented to this court by both sides.
For the first time the theory is advanced in this opinion that a telephone utility operated not for profit, as pleaded in this case, is an impossible, nonexistent thing, and that therefore the defendant farmers’ mutual company is operating a utility for profit, and hence subject to the jurisdiction of the commission.
If the foregoing premises and conclusions be sound doctrine, then this judgment violates the ' jurisdiction and powers of the Public Utilities Commission under the statute.
I further hold that this judgment violates the constitution of the state, the constitution of the nation, and every basic principle of equal rights upon which the American government and our institutions are founded.
I hold that Section 614-52, General Code, provides for and protects business monopolies, which are by the commission imposed upon the municipali *522 ties of the state in violation of Home Rule rights and powers, especially Article XVIII of the Constitution adopted in 1912, and the various sections thereof, and that said telephone monopolies which are authorized and sanctioned by this judgment are unconstitutional and undemocratic and un-American in the best sense of those words. Realizing, however, that all the constitutional questions involved in this case are involved likewise in the companion case, The Local Telephone Co. v. The Cranberry Mutual Telephone Co., post, 524, and that in addition thereto there are a number of constitutional questions involved in the latter case that are not involved in the present case, I therefore reserve and postpone to the latter case the arguments upon the various constitutional questions involved in both cases:
Back to the Farm. The time has come when this expression should be not merely a piece of rhetoric. It should be a reality; but it must be based upon the farm folk having, as far as possible, the same comforts and conveniences as our city folks.
Farm life must be made attractive and comfortable, and easy and frequent communication between the farmers of the same community is such a self-evident advantage, if not necessity, that governmental policy should encourage it rather than throttle it.
Farm life has no police system. The most efficient policeman in the farming districts is the farmer’s telephone, by which he may summon his neighbors when his life, his home, or his property *523 is in danger. The farmer has no fire department. His telephone enables him, however, to hastily summon his neighbors in case of fire. The telephone enables him to speedily, summon the village physician or surgeon in case of sudden sickness or injury. By telephone he makes important personal and business calls, saving time and labor. It is an efficient aid to him in connection with his social, agricultural and religious organizations. Other things being equal, the farther apart the neighbors are the greater the need of easy, quick, cheap and frequent communication.
I have read the opinion and the briefs most carefully, but I have yet to find a single persuasive reason why a body of farmers in a rural community should be denied by this court or any commission the right to organize, install, equip and operate a telephone exchange for their own convenience, at cost and without any profit whatsoever, without obtaining a permit, without asking leave or license of anybody save the authorities in charge of the public ways.
There is too much nonsensical regulation of purely personal affairs in to-day’s government. Liberty is almost unknown. You are permitted to take it in homeopathic doses when administered by some commission or court, but what that measure of liberty may be you cannot tell until this court decides. It is high time that we were going back to the constitution, instead of going back on the constitution.